UNITED STATES of America,
Plaintiff–Appellee,

v.

Salvador ANDRADE–LARRIOS,
Defendant–Appellant.

### Nos. 92–50018, 92–50160.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1994.

Decided Nov. 4, 1994.

---

Michael Machat, Los Angeles, CA, for defendant-appellant.

George Cardona (argued), John F. Gibbons (on the briefs), Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, FARRIS and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Appellant attacks his guilty plea. He claims that the judge impermissibly participated in plea bargaining, his attorney rendered ineffective assistance, and his plea was coerced. The record does not support him.

## I. FACTS

Andrade–Larrios pleaded guilty to two drug charges. In exchange, the government promised a 151 month prison sentence and dismissal of a firearms charge. His attorney had negotiated the agreement with the prosecutor orally. It had not been put in writing when Andrade–Larrios changed his plea of "not guilty" to "guilty" in open court.

Eleven months after pleading guilty, Andrade–Larrios moved to vacate the judgment. He submitted a declaration alleging that his lawyer told him to plead guilty, or else the government would prosecute his brothers. Andrade–Larrios asserted that what the police characterized as a struggle when he resisted arrest, was really a brutal beating, and his attorney rendered ineffective assistance of counsel because he did not seek to have the charges dismissed because of the beating. The district judge denied an evidentiary hearing on the motion, because

Andrade–Larrios had submitted nothing but conclusory allegations to support his claim, and the record conclusively showed that he was not entitled to relief. Andrade–Larrios appealed. That is the first of the two consolidated appeals before us as case number 92–50018.

A few months later, while his appeal was pending, Andrade–Larrios filed another motion in district court to vacate his conviction. It purported to be a motion pursuant to Federal Rules of Civil Procedure Rule 60(b). Additional evidence was attached to his motion to support the coercion claim. A brother and several sisters said in sworn declarations that the defense attorneys had told them that if Andrade–Larrios did not plead guilty, the United States would prosecute all the Andrade brothers, so "[w]e went and talked to our brother and pressured him to plead guilty in order that we not be prosecuted." The district court denied this motion on two grounds. First, the Federal Rules of Civil Procedure do not apply to criminal cases. Second, if construed as a petition for habeas corpus relief under 28 U.S.C. § 2255, the same issues had been raised in the previous motion, which was then on appeal. The appeal from this order is before us as case number 92–50160.

## II. ANALYSIS

### A. The Second Appeal

■ Andrade–Larrios's statement of issues and arguments does not address the district court's order denying his second motion, the one made while his appeal from the first order was pending. Accordingly, appellant waived his appeal of all the issues from the second order. See Fed.R.App.P. 28(a)(5); Wilks v. Reyes, 5 F.3d 412, 416–17 (9th Cir. 1993) (holding that appellant's brief satisfied Rule 28(a)(5)).

### B. Judge's Participation in Plea Bargaining

■ Andrade–Larrios argues that the district judge improperly participated in plea bargaining, in violation of Federal Rule of Criminal Procedure 11(e)(1). This is his lead argument on appeal, but he did not present it in district court. We consider it neverthe-

less, because this kind of error can be raised initially on appeal, at least where the putative wrongful judicial participation is fully developed and preserved in the transcript. United States v. Bruce, 976 F.2d 552, 554 (9th Cir.1992).

Rule 11(e)(1) allows the parties in a criminal action to "engage in discussions with a view toward reaching [a plea] agreement." It also requires that "[t]he court shall not participate in any such discussions." We must decide whether there was "participation" by the judge for purposes of the proscription in Rule 11.

At the change of plea proceeding, Andrade–Larrios's attorney told the judge that "[a]n understanding was reached," subject to judicial approval, between the defense and prosecution that Andrade–Larrios would change his plea to guilty on the two drug counts, and the government would dismiss the gun count, which would have added as much as five additional years to the time Andrade–Larrios would have to serve. The guidelines sentence on the two drug counts would be 151 to 188 months, and under the plea agreement, the government would recommend a sentence at the bottom of the guidelines. Here is what was said after these terms had been established. This is what appellant argues was improper judicial participation:

MR. MICHAELSON [Andrade–Larrios' counsel]: I have spoken with Mr. Andrade. And what I am asking essentially is this. And the government, after a review of the case, believes that a 12 and a half year sentence is not something that they would oppose. I am telling your honor—that is 151 months. I am telling your honor that Mr. Andrade is willing to plead guilty to Counts One and Two, if in fact, your honor would impose a 12 and a half year sentence. That has nothing to do with Mr. Gibbons [government's counsel] at this point now.

THE COURT: I don't know. At this point you are getting touchy, because now you are getting me into the—I don't think you are really. I think that—I am not getting into the negotiation process, which is precluded by Rule 11.

MR. MICHAELSON: No, you're not.

THE COURT: What you are basically saying, "I am offering this." You are in a gray area, but I think you are probably all right.

MR. MICHAELSON: Well, to be candid, your Honor—

THE COURT: You're saying, "Look it, if we have a de facto agreement"—just one second.

(Brief pause)

THE COURT: Okay.

MR. MICHAELSON: Yes. I am saying that—your Honor was just in the middle of, I think, of saying that what we're asking your honor to do—I am asking your honor to do is to say, "Yes. I believe a 12 and a half—I can give you a 12 and a half year sentence, and I am willing to abide by such an understanding."

THE COURT: Why haven't you reached—Rule 11 contemplates just such agreements.

MR. MICHAELSON: It does.

THE COURT: Why do you come in here like this for?

MR. MICHAELSON: I am sorry.

THE COURT: Why don't you say, "We have an agreement, 12 and a half years bottom end. You want to go for it, Judge? If you are willing to go for it, we have got an agreement." Rule 11 clearly contemplates that.

MR. MICHAELSON: That is fine. I am willing to say that.

THE COURT: Why haven't you done it?

MR. MICHAELSON: Well, your honor, because frankly, it is a very delicate situation. I have spoken with Mr. Gibbons about it, and I didn't speak about the 11(e) situation. But—

THE COURT: What is so delicate?

MR. MICHAELSON: I don't know. I don't know what is so delicate, but everything is treated as if—it is not delicate for Mr. Gibbons, but apparently it is difficult to—I don't know if I can walk between the lines, it is difficult to draw up such an agreement—can I just say that—for some reason. But it is—that is exactly what we want. 11(e), 12 and a half years. He is willing to do it and he is ready to plead today.

. . . . .

MR. MICHAELSON: I think what 11(e) contemplates is that if after you review everything that you can't do it, then you allowed us to begin over again. We don't want to do that, obviously, but that is what 11(e) contemplates. So, if for some reason of conscience or feeling that liberty or justice is not served, you then have the right to tell Mr. Andrade and myself, "I can't do it, but you can withdraw your guilty plea and start off all over again." We don't want that. We think the deal is an appropriate one. Mr. Gibbons thinks it is an appropriate one. He knows the case, and I know the case, and we would like your Honor to do it. So, that is what we wanted to do . . . .

(E.C.R. 30–32)

■ We have three recent cases which establish how such Rule 11(e)(1) "participation" arguments should be addressed. *Bruce,* 976 F.2d 552; *United States v. Torres,* 999 F.2d 376 (9th Cir.1993); *United States v. Frank,* 36 F.3d 898 (9th Cir.1994). *Bruce* holds that if the judge pressures the defendant into taking the deal, it is improper judicial participation, and the defendant is entitled to have his plea set aside. *Torres* and *Frank* hold that if an agreement has been made, and the judge engages in a colloquy to find out what the deal is, and whether the defendant competently intends to take it, the defendant is not entitled to have his plea set aside. The rule against judicial participation in plea bargaining protects the parties against pressure to settle criminal cases on terms favored by the judge. *Compare Torres,* 999 F.2d at 378 (judge did not violate Rule 11—parties had already "hammered out" the agreement before presenting to sentencing judge) *with United States v. Garfield,* 987 F.2d 1424, 1426–27 (9th Cir.1993) (district court erred by advising defendant on the merits of pleading guilty); *United States v. Anderson,* 993 F.2d 1435, 1436–38 (9th Cir.1993) (judge violated Rule 11 by stating before plea agreement had been reached that

he would not accept anything less than a guilty plea to all counts charged); *Bruce,* 976 F.2d at 556–58 (judge violated Rule 11 by encouraging defendants to take the plea bargain rather than go to trial).

■ *Bruce* has some language which is frequently quoted out of context in Rule 11(e)(1) "participation" arguments. The quotations, taken out of context, suggest that if the judge asks any questions or talks to the defendant before the end of the standard Rule 11 colloquy ("How do you now plead to the charge, guilty or not guilty?" "Guilty."), then he has violated the rule. That is the gist of the argument here. As *Frank* explains, *Bruce* cannot mean that, because if it did, the prohibition of Rule 11(e)(1) would prevent the judge from engaging in the colloquy required by Rule 11(c), (d), and (f). The holding of a case is not the same thing as a quotation from a case. The holding is the proposition of law which requires that the particular facts in that case produce the result. *See Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821) (Chief Justice Marshall distinguishing dicta in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)).

In this case, the judge was not doing anything to pressure or persuade Andrade–Larrios to take the deal. The deal had been made, and the judge was trying to find out what it was. It took more questions than usual, because the plea agreement had not yet been put in writing.

Andrade–Larrios now argues that his counsel and the government's had negotiated an 11(e)(1)(B) agreement for 151 months, but the judge turned it into an 11(e)(1)(C) agreement for 151 months. That does not make any sense. An 11(e)(1)(B) agreement requires the prosecutor to make a recommendation, but leaves the judge free to impose a harsher sentence. An 11(e)(1)(C) agreement requires the judge to impose the sentence the prosecutor and defendant agree upon. If the judge rejects an 11(e)(1)(C) agreement, the defendant may withdraw his plea. Why would a defendant complain on appeal that the judge turned what would have been a bottom-of-the guidelines 151 month recommendation, which the judge was free to ex-

ceed, into a binding 151 month agreement? If that kind of pressure were exerted, it would be on the prosecutor, not the defendant, because it is the prosecutor who gives up something if such a plea agreement is changed from an 11(e)(1)(B) to 11(e)(1)(C). Why would the judge want to change the agreement to remove his own discretion? Andrade–Larrios argues that even though he was not harmed, this change still violated *Bruce.* Our reading of the transcript does not support Andrade–Larrios's claim that the judge turned an 11(e)(1)(B) agreement into one under 11(e)(1)(C). Defense counsel told the judge right at the beginning that it was an 11(e)(1)(C) agreement. The colloquy just clarified what had been said. Defense counsel's critical statement was "Andrade is willing to plead guilty to Counts One and Two, if in fact, your honor would impose a 12 and a half year sentence." Defense counsel made other remarks which sounded like an 11(e)(1)(B) agreement, so the judge had to inquire to find out which it was.

Andrade–Larrios also challenges the colloquy because the judge asked about the less important aspects of the agreement, such as whether there was agreement regarding any fine to be imposed. He had to, in order to find out what the agreement was, what things were not agreed upon, and assure that the defendant understood what he was committing himself to, under 11(d). That discussion was appropriate under Rule 11(c), (d), and (f) and does not run afoul of the prohibitions on judicial participation discussed in *Bruce.*

C. Duress

■ Andrade–Larrios argues that he should have been allowed to withdraw his plea, or at least have been given a hearing, because of duress. The duress claimed is that prosecution of his brothers had been threatened if he did not plead guilty. But he put in no evidence with his motion to support this claim. The affidavits did not come in until the second motion.

The transcript shows that the district court fully inquired into voluntariness. Andrade–Larrios denied under oath that he was under

any duress. The district judge asked Andrade–Larrios several times, in different ways, whether he was entering the plea freely and voluntarily. Each time Andrade–Larrios confirmed that he was not being coerced. Andrade–Larrios' attorney also stated that he believed Andrade–Larrios' plea was voluntary. Based on his observation of Andrade–Larrios, and Andrade–Larrios' response to his questions, the district judge specifically found that Andrade–Larrios was free of coercive influence.

On appeal, Andrade–Larrios argues that the inquiry should have been more searching, because defense counsel said that "it is a very delicate situation." The judge responded to this by asking "What is so delicate?" He explored the "delicacy" fully, and found that it seemed to be some reluctance by defense counsel to clarify that he was claiming to have an 11(e)(1)(C) deal rather than a mere 11(e)(1)(B) deal. The delicacy, as explained on the record, had nothing to do with duress.

### D. Effective Assistance

Andrade–Larrios argues on appeal that he was denied effective assistance of counsel because his family members paid his lawyers fees, and his lawyer was serving their interests rather than his when he advised him to change his plea. We do not reach the legal issues which this argument might raise, because no factual basis for it was established until the second motion. The judge could have no inkling of this from anything Andrade–Larrios put before him on the first motion.

### E. Breach of Agreement

Andrade–Larrios argues that the prosecutor breached the plea agreement, by prosecuting his brothers anyway. But there is nothing in the record on the first order to support either the proposition that he had a plea agreement that his brothers would not be prosecuted, or even that his brothers were in fact prosecuted.

### F. Evidentiary Hearing

 As has been explained, there was nothing in the record to show the district court why it needed an evidentiary hearing to resolve some material factual dispute. The district judge acted within his discretion in denying an evidentiary hearing on the § 2255 motion because the files and records conclusively showed that the movant was not entitled to relief. 28 U.S.C. § 2255; *Shah v. United States,* 878 F.2d 1156, 1159 (9th Cir.), *cert. denied,* 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); *Watts v. United States,* 841 F.2d 275, 277 (9th Cir.1988).

AFFIRMED.