**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Kenneth R. BRUCE, Defendant–
Appellant.**

**No. 90–50549.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1992.
Decided Oct. 1, 1992.

Kathryn A. Thickstun Leff, San Diego, Cal., for defendant-appellant.

D. Thomas Ferraro, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: CANBY, REINHARDT, and WIGGINS, Circuit Judges.

REINHARDT, Circuit Judge:

In this case, we consider whether the fact that a district judge has participated in plea bargaining discussions entitles a defendant to have the plea vacated on appeal. We also consider the extent to which Fed. R.Crim.P. 11 requires the district court to explain to a defendant the nature of the charges alleged in the indictment. We also examine the effect of the failure to raise those questions in the district court. Having considered these matters, we vacate appellant's convictions and remand for further proceedings.

Kenneth Reed Bruce and Deborah Miserany were arrested at their residence in Oceanside, California on January 25, 1989, for conspiracy to distribute methamphetamine. A superseding six-count indictment was filed against them on April 28, 1989. On January 9, 1990, the prosecutor and the defendants discussed a proposed plea agreement with the district judge. The next day, the defendants accepted the agreement: the government waived the indictment, filed a one count superseding information that charged the defendants with aiding and abetting a conspiracy to possess a controlled substance with intent to distribute, and Bruce and Miserany entered a plea of guilty to that offense. After a colloquy with defendants, the district judge accepted their pleas, and a sentencing date was set for March 26, 1990.

Subsequently, Bruce moved to withdraw his guilty plea under Fed.R.Crim.P. 11(c)(1) on the ground that his plea was not "knowingly and intelligently" made because he did not understand the charge to which he had pled. The district court denied the motion and sentenced Bruce to 77 months in prison. Bruce appeals.

I

Bruce first contends that he should be allowed to withdraw his guilty plea because the district court improperly participated in the discussion regarding his plea agreement in violation of Fed.R.Crim.P. 11(e)(1).

■ The government resists Bruce's argument both on procedural grounds and on the merits. The government initially urges that Bruce cannot assert the Rule 11(e)(1) issue on appeal because he did not raise it below. Although we generally do not consider issues not raised before the district court,[1] Bruce is entitled to raise his claim for two reasons. First, a district court's failure to follow Rule 11(e)(1) is "plain error" reviewable for the first time on appeal. The Rule contains a clear command: "[t]he court shall not participate in any [plea] discussions." Fed.R.Crim.P. 11(e)(1). The duty to abide by that rule does not arise as the result of any motion made by the defendant; rather, the court is bound by the Rule's restrictions. A district court's failure to comply with the provisions of Rule 11(e)(1) is plain error that entitles a defendant to withdraw his guilty plea even if the error is identified for the first time on appeal. *See United States v. Adams*, 634 F.2d 830, 831, 836 (5th Cir. 1981) (raising Rule 11(e)(1) issue *sua sponte* and reversing on that basis); *see also United States v. Sanchez–Lopez*, 879 F.2d 541, 551 (9th Cir.1989) (reviewing claim of judicial misconduct for plain error); *Okada*, 694 F.2d at 570 n. 8 (noting general rule).

■ Our second reason is more general. In assessing the merits of a Rule 11(e)(1) claim on appeal, "the issue is purely legal and the facts are fully developed". We may decide questions of this nature even if they were not raised below. *State of Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1405 (9th Cir.1989), *cert. denied*, 495 U.S. 919, 110 S.Ct. 1949, 109 L.Ed.2d 312 (1990); *see also In re Wind Power Systems, Inc.*, 841 F.2d

---

1. *See Brogan v. San Mateo County*, 901 F.2d 762, 765 (9th Cir.1990) (noting general rule and some exceptions); *People of the Territory of Guam v. Okada*, 694 F.2d 565, 570 n. 8 (9th Cir.1982), *amended*, 715 F.2d 1347 (1983), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 367 (1984) (same).

288, 290 n. 1 (9th Cir.1988) (same). The comments by the district court regarding the plea negotiations are all on the record; there is no factual dispute regarding their nature. Determining whether or not those comments violated Rule 11(e)(1) is a purely legal question that we review *de novo.* Accordingly, Bruce can raise that question for the first time on appeal, and we are authorized to address it. *See In re Wind Power Systems, Inc.,* 841 F.2d at 290 n. 1.

■ We thus turn to the merits of Bruce's Rule 11(e)(1) claim. During the discussion of the proposed plea agreement considered on January 9th, the following colloquy occurred:

The Court: Mr. Prosecutor, I looked over the government's trial memorandum. I want you to outline for the purposes of defense counsel the negotiations of a plea, your offer to the defense counsel. Would you do that on the record?

Mr. Ferraro [the prosecutor]: Yes, sir....

[Ferraro then describes the proposed agreement]

The Court: Based on what [the government] charged [in the indictment], what could they be looking at?

Mr. Ferraro: Your honor, they are facing right now a minimum mandatory, if convicted of any of the drug counts, of ten years imprisonment....

[I]t could possibly be that the guideline sentence would be higher than the minimum mandatories....

The maximum sentence [a]s charged [is] life imprisonment....

The Court: Mr. Crowley [Bruce's attorney], do you understand fully what [the prosecutor] is saying?

Mr. Crowley: Yes, your honor. And it has been explained to my client.

The Court: Do you understand that, son?

Bruce: Yes.

The Court: Mr. Cimmarrusti [Miserany's attorney], do you understand what the prosecutor said?

Mr. Cimmarrusti: Yes.

The Court: Did you explain that to your client?

Mr. Cimmarrusti: Yes.

The Court: Do you understand that, Miss Miserany?

Miserany: Yes.

The Court: You don't want to think about that some more, the two of you?

Miserany: No.

Bruce: No.

The Court: We are talking about a life sentence.

Bruce: I understand that.

The Court: Versus a prospective 42 months [under the plea agreement].... I mention [the life sentence] to you because the new laws are so heavy, so very, very heavy, and I am the one that has to impose that sentence if you are found guilty on all of these things. That is going to be tough, but that is what [the] law says I have to give you. You have to think about that.

Okay. See you tomorrow morning. Think carefully about that tonight. I don't know if you leave it open tonight.

Mr. Ferraro: Your honor, at the court's request, I will.

The Court: I would think seriously about it, both of you. Life in prison is a long time. It is really nothing to play with.

Gentlemen [sic], are you parents?

Miserany: Yes.

Bruce: Yes.

The Court: If it was my child, I would think carefully about it, if it comes down to that, I have to give it.

■ Although circuit precedent interpreting Rule 11(e)(1) is slim, it is clear that the trial judge's participation in the plea discussion violated the Rule. The command of Fed.R.Crim.P. 11(e)(1) with regard to plea negotiations is simple and admits of no exceptions: "[t]he court shall not participate in any such discussions." Before the parties have concluded a plea agreement

and have disclosed that final agreement in open court, "the judge must refrain from *all forms* of plea discussions." *Adams,* 634 F.2d at 835 (emphasis added). Rule 11(e)(1) is "an *absolute prohibition* on all forms of judicial participation in ... the plea negotiation process." *Id.* (emphasis added). "The commentaries regarding [the Rule], and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part *whatever* in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement." *United States v. Werker,* 535 F.2d 198, 201 (2nd Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976) (emphasis added). Rule 11(e)(1) simply commands that the judge not participate in, and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court.

■ The "bright-line rule" created by Fed.R.Crim.P. 11(e)(1) bars a judge from participating in plea bargaining for three main reasons. First, such participation is prohibited because judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty. *See Werker,* 535 F.2d at 202 ("[J]udicial intervention may coerce the defendant into an involuntary plea that he would not otherwise enter."). Among other things, "[i]t might lead the defendant to believe that he would not receive a fair trial, were there a trial before the same judge." Notes of Advisory Committee on Rules, 1974 Amendment, 18 U.S.C.A. Federal Rules of Criminal Procedure 1 to 11 (West 1986) at 351; *see also Werker,* 535 F.2d at 202 ("The defendant may fear that rejection of the plea will mean imposition of a more severe sentence after trial or decrease his chances of obtaining a fair trial before a judge whom he has challenged."). A coerced plea would not only violate a defendant's fundamental constitutional rights, *see Waley v. Johnston,* 316 U.S. 101, 104, 62 S.Ct. 964, 965, 86 L.Ed. 1302 (1942), but also necessarily risks the incarceration of even innocent criminal defendants. *See* Notes of Advisory Committee on Rules at 351 ("The risk of not going along with the disposition apparently desired by the judge might induce the defendant to plead guilty, *even if innocent.*") (emphasis added). That unacceptably high risk of coercion exists even if the judge does not explicitly endorse a particular plea agreement:[2] "*regardless* of the judge's objectivity, it is the defendant's *perception* of the judge that will determine whether the defendant will feel coerced to enter a plea." *Werker,* 535 F.2d at 202.[3]

---

**2.** The judge's comments here clearly indicate his support of the proposed plea agreement and his belief that accepting it would be in the defendant's best interests. The judge's emphasis on the difference between the possible sentence under the plea agreement (42 months) and the possible sentence without it (life imprisonment), his attempt to ensure that the defendants and their counsel "understood" the proposed plea agreement, his inquiry regarding whether the defendants "don't want to think about [the agreement] some more", his suggestion that the defendants "think seriously about" the agreement, his expressed concerns regarding the children involved and the parental obligations, and the prosecutor's statement that he would leave the proposed plea agreement (previously rejected by the defendants) on the table for another night *"at the court's request"* make unambiguously clear the judge's preference that the defendants accept the plea bargain and plead guilty. While that fact makes the violation in the present case all the more clear, it is entirely unnecessary to our result: Rule 11 explicitly bans *all* judicial participation in plea discussions, not merely participation that suggests that the judge is in favor of the proposed agreement.

**3.** Of course, if the judge *does*—as here—recommend the acceptance of a particular agreement, the degree of coercion inherent in judicial participation in plea discussions is only heightened. *See* Welsh White, *A Proposal for Reform of the Plea Bargaining Process,* 119 U.Pa.L.Rev. 439, 452 (1971) ("When a judge suggests to a defendant, either directly or through his counsel, that he should plead guilty, the coercive effect of this suggestion is likely to be overwhelming.").

Second, Rule 11 protects the integrity of the judicial process. "The Rule is based on the sound principle that the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any questions or suspicion when it becomes his duty to impose sentence." *Werker,* 535 F.2d at 203. When judges participate in plea discussions, a defendant may "view[] the judge as an adversary during the bargaining process, rather than as the embodiment of his guarantee of a fair trial and just sentence." Kathleen Gallagher, *Judicial Participation in Plea Bargaining: A Search for New Standards,* 9 Harv.C.R.–C.L.L.Rev. 29, 44 (1974); *see also* White, *supra* note 3, at 452–53 ("[T]he judge may jeopardize his role as an impartial arbiter of justice if he participates in plea negotiating."). The loss of judicial integrity is particularly serious when, as here, *see supra* at 7 n. 2, the judge explicitly or implicitly advocates a particular bargain. *See Werker,* 535 F.2d at 203 ("As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant."). However, legitimate concerns exist even when the judge does not urge a particular course of action upon the defendant: "[t]he unequal positions of the judge and the accused ... raise a question of fundamental fairness" regardless of the degree or type of judicial involvement. *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966); *see also* White, *supra* note 4, at 453 ("[A]ctive judicial participation in plea bargaining may unfavorably color the defendant's view of the system. To the defendant, the judge becomes an adversary or at least a com-

promiser rather than an embodiment of his guarantee to a fair trial and impartial sentence."). The judge's role must be that of a neutral arbiter of the criminal prosecution: his involvement in the adversary process of plea negotiation is beyond and detracts from that judicial duty.

Finally, Rule 11 bars judicial participation in plea discussions in order to preserve the judge's impartiality *after* the negotiations are completed. Judicial involvement detracts from a judge's objectivity in three ways. First, "[s]uch involvement makes it difficult for a judge to objectively assess the voluntariness of the plea" eventually entered by the defendant. Notes of Advisory Committee on Rules at 351; *see also Adams,* 634 F.2d at 839 ("We cannot truly expect this role to be filled by a trial judge who has participated in discussions leading to a plea bargain, for such a judge may ... feel a personal stake in the acceptance of the plea or have a preconceived notion of its validity."); Note, *Guilty Plea Bargaining: Compromises By Prosecutors to Secure Guilty Pleas,* 112 U.Pa. L.Rev. 865, 891–92 (1964); Comment, *Official Inducements to Plead Guilty: Suggested Morals for a Marketplace,* 32 U.Chi. L.Rev. 167, 180–83 (1964). Next, judicial participation in plea discussions that ultimately fail inherently risks the loss of a judge's impartiality during trial,[4] not only because he becomes aware of the defendant's possible interest in pleading guilty,[5] but also because he may view unfavorably the defendant's rejection of the proposed agreement. *See Adams,* 634 F.2d at 840 ("The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice.... Moreover, the defendant is likely to make in-

---

4. *See* White, *supra* note 4, at 453; *see also* Gallagher, *supra,* at 44 ("It is highly unlikely that the judge could preside over a trial impartially under such circumstances.").

5. *See Werker,* 535 F.2d at 202 ("Any predilections of guilt that a judge might hold regarding a defendant must inevitably be reinforced by the knowledge that the defendant wishes to engage in plea bargaining negotiations.").

criminating concessions during the course of plea negotiations."); *Werker*, 535 F.2d at 202 ("Nor can we fail to consider the subtle pressures that may be exercised by a judge against a defendant who rejects an opportunity ... [to] relieve the judge of a lengthy trial."). Further, involvement in plea negotiations diminishes the judge's objectivity in post-trial matters such as sentencing and motions for a judgment of acquittal. *See id.;* White, *supra* note 4, at 453; *see also* Gallagher, *supra*, at 44 ("If a judge urges a defendant to plead guilty in exchange for a sentencing concession and the defendant rejects the arrangement, the judge may desire to reaffirm his initial belief in the defendant's probable guilt after the defendant has been convicted at trial.").

In sum, for a variety of reasons, Rule 11 contains a clear prohibition on judicial involvement in plea discussions. Most of the rationales behind the adoption of that rule apply *whenever* a judge participates in plea negotiations; however, even were *none* to apply in a particular case, a judge would nevertheless be required to follow the mandate—perhaps in part prophylactic[6]—of Rule 11.

We empathize with the district judge's concern that the defendants' decisions to exercise their fundamental constitutional right to trial by jury might be unwise and might lead to excessively harsh punishment; we similarly recognize the judge's conscientious belief that the defendants' decisions in that regard should be made only after they are fully informed as to the extent of the potential risks. There is no doubt that the judge was both compassionate and well-motivated—qualities important to the proper performance of one's judicial duties—and we intend no criticism of his conduct. It is not unusual for judges who are required by the Sentencing Guidelines or mandatory minimum sentencing statutes to impose inordinately long sentences to be concerned about a defendant's decision to

risk the imposition of unjust, if not unconscionable, punishment by going to trial. It is rational and humane in such circumstances for judges to want to influence the defendant to accept a reasonable plea bargain and avoid the possibility of prolonged and unduly harsh incarceration. We empathize equally with the frustration district judges feel over their inability to impose sentences that fit the individual and the particular circumstances of the crime. The rigid limitations on their capacity to administer justice fairly are contrary to their fundamental training and are understandably difficult for them to accept. Nevertheless, the district judge's comments here were improper and, unfortunately, coercive. No matter how benign the court's intent, its "awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not," and "[a] defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence." *Elksnis*, 256 F.Supp. at 254. More important, the unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances: it is a rule that, as we have noted, admits of no exceptions. *See Adams*, 634 F.2d at 839 ("Rule 11(e)(1) establishes an absolute ban on judicial participation. This strict rule is necessary if the system established by Rule 11 is to function....").

■ We agree with the Fifth Circuit that "a defendant who has pled guilty after the judge has participated in plea discussions should be allowed to replead, without having to show that actual prejudice has resulted from the participation." *Adams*, 634 F.2d at 839; *see also McCarthy v. United States*, 394 U.S. 459, 463–64, 89 S.Ct. 1166, 1169–70, 22 L.Ed.2d 418 (1969) ("[A] defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the

---

6. *See Adams,* 634 F.2d at 837.

procedure provided for in Rule 11."); *United States v. Jaramillo–Suarez*, 857 F.2d 1368, 1370 (9th Cir.1988) ("[A]ny non-compliance with Rule 11 is reversible error."). On remand, Bruce is entitled to withdraw his guilty plea, if he so wishes, and proceed to trial.

We note that in *Adams*, the Fifth Circuit ordered, under somewhat different circumstances, that resentencing proceedings be held before a different judge. *See Adams*, 634 F.2d at 842–43. Bruce has not sought the reassignment of further proceedings in this case; accordingly, we need not determine whether such an order would be required here. In any case, in light of his appeal, Bruce's conviction entered on his plea of guilty cannot stand. We therefore vacate it.

## II

■ There is an alternate ground that also requires that we vacate Bruce's conviction: the trial court improperly accepted his guilty plea without informing him of the nature of the charges against him as required by Rule 11(c)(1). Rule 11 requires that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands ... the nature of the charge to which the plea is offered...." Fed. R.Crim.P. 11(c)(1).

■ "[A]lthough the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.... [and] produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." *McCarthy*, 394 U.S. at 465, 89 S.Ct. at 1170 (footnotes omitted). The question whether the district court's colloquy with the defendant satisfies the requirements of Rule 11(c)(1) is a matter of law which we review *de novo*. *See*

*Jaramillo–Suarez*, 857 F.2d at 1369; *see also Hayes v. Kincheloe*, 784 F.2d 1434, 1436 (9th Cir.1986), *cert. denied*, 479 U.S. 871, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987) (reviewing voluntariness of plea on habeas *de novo* ). While that determination depends upon " 'the peculiar facts of each situation, looking to both the complexity of the charge and the personal characteristics of the defendant,' " *United States v. Kamer*, 781 F.2d 1380, 1384 (9th Cir.), *cert. denied*, 479 U.S. 819, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986) (quoting *United States v. Wetterlin*, 583 F.2d 346, 351 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979)), we are required to base our resolution of that question *solely* on the basis of the record of the plea proceeding. *See Kamer*, 781 F.2d at 1383–84.

■ Rule 11(c)(1) makes it "incumbent upon a district judge accepting a plea to make the minor investment of time and effort necessary to set forth the meaning of the charges and to demonstrate on the record that the defendant understands." *Id.* at 1385. "The trial judge is required to engage in a colloquy with the defendant and elicit responses from him which demonstrate, on the record, that the accused does so understand." *Id.* Here, the district judge did not do so. The judge informed Bruce that the superseding information charged him with "conspiracy to manufacture methamphetamine," asked him if that was correct, and Bruce responded affirmatively. That brief, vague explanation of the information in no way satisfied the requirement of Rule 11(c)(1) that Bruce be informed of the "nature" of the charge to which the plea is offered. Moreover, the judge's description of the charge was incorrect: Bruce pled guilty to *aiding and abetting* a conspiracy to *possess* a controlled substance *with the intent to distribute it.* The judge's cursory recitation of the charge in no way informed Bruce of the "nature" of the crime—let alone its correct technical legal designation—to which he would plead guilty. The record of the plea

proceeding does not show that Bruce was a sophisticated student of the law; yet the nature and elements of the crime to which he was pleading guilty were not explained to him. In the absence of such an explanation, the district court did not meet its obligation under Rule 11(c)(1) of *informing* the defendant and *determining* that he *understands* the charge to which the plea is offered. *See Wetterlin*, 583 F.2d at 350 (reversing conviction for violation of Rule 11(c)(1) because "[t]he judge made no effort to explain the law of conspiracy generally or by reference to the specific charge of this case, nor did he personally inquire and determine that the defendant understood the nature of the charges") (footnote omitted). A trial judge fails to satisfy his obligation under Rule 11 when, as here, he does not fully inform the defendant of the meaning and application "of legal argot and other legal concepts that are esoteric to an accused," including the meaning and application of the term "conspiracy". *United States v. Coronado*, 554 F.2d 166, 172 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977) (reversing conviction for violation of Rule 11 because the trial court failed to explain the meaning of the term "conspiracy").

 The government contends that Rule 11(c)(1) was satisfied because, at the beginning of the plea proceeding, the Clerk informed the defendants that the information charged them with "conspiracy to manufacture methamphetamine and possess [sic] methamphetamine with intent to distribute ... [and] aiding and abetting" and the defendants' counsel subsequently waived the reading of the information. The government is incorrect. First, a waiver of the reading of the indictment does not relieve the judge of his duties under Rule 11. *See Jaramillo–Suarez*, 857 F.2d at 1370; *Wetterlin*, 583 F.2d at 350 n. 6. Second, the Clerk's cursory recitation of the charges against Bruce does not satisfy

the requirements of Rule 11(c)(1) for the same reason the trial judge's later comments were inadequate: it did not inform the defendant of the *nature* (as opposed to the formal legal description) of the charges against him. Third, the comments were not specifically addressed to the defendant nor were they acknowledged by him and hence do not meet the requirement of Rule 11(c)(1) that the defendant be personally addressed and his understanding of the nature of the charges ensured. *Cf. McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) ("[W]e reject the Government's contention that Rule 11 can be complied with although the district judge does not personally inquire whether the defendant understood the nature of the charge."). Fourth, the Clerk, obviously, is not a judge, and hence his comments cannot satisfy Rule 11. Fifth, even if the entire information *had* been read to the defendants—which it was not—that recitation would suffice to inform the defendant of the nature of the charges against him only in exceedingly simple and easily-understood cases, *see Kamer*, 781 F.2d at 1384, and in any case "clearly does nothing to establish on the record that the court personally determined that the defendant *understood* the nature of the charges." *Wetterlin*, 583 F.2d at 350 n. 6.

"We have banished from our jurisprudence the days when defendants were lined up and the guilty pleas were taken in wholesale lots without individualization. The expanded procedure is a new principle that is very sacred to modern day jurisprudence. Even a plea taking session should have more dignity than a bargain basement sale at a department store. It should be unhurried and patient. It should never be so frenetic that the judge's explication of the charges is omitted." *Coronado*, 554 F.2d at 172. That fundamental legal principle, clearly embodied in Rule 11, was not followed here. As a result, Bruce's guilty plea cannot stand.[7]

---

**7.** *See McCarthy*, 394 U.S. at 468–69, 89 S.Ct. at 1172 ("In *Heiden v. United States*, 353 F.2d 53 (1965), the Court of Appeals for the Ninth Circuit held that when the district court does not comply fully with Rule 11 the defendant's guilty

plea must be set aside and his case remanded for another hearing at which he may plead anew. Other courts of appeals, however, have consistently rejected this holding, either expressly or tacitly.... We are persuaded that the

## Conclusion

In light of our holdings in Section I and II, we vacate Bruce's conviction on the basis of each such holding and remand the case to the district court for further proceedings consistent with this opinion.[8]

VACATED and REMANDED.

Court of Appeals for the Ninth Circuit has adopted the better rule.").

8. Because we vacate Bruce's conviction on these grounds, we decline to address the other issues he raises on appeal.